ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JUAN CARLOS RUAÑO MUÑOZ Y OTROS<br><br>Recurridos<br><br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO EL DORADO CLUB Y OTROS<br><br>Peticionarios | KLCE202500425 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D DP2008-0613<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 20 de junio de 2025.

**I.**

La presente causa versa sobre el cumplimiento de la *Sentencia* dictada el 6 de septiembre de 2012.[1] En el referido dictamen, el foro de primera instancia condenó a la parte peticionaria, Consejo de Titulares del Condominio El Dorado Club, a pagar ciertas sumas dinerarias a favor de la parte recurrida, el Sr. Juan Ruaño Muñoz. En apelación, únicamente se le eximió al compareciente de satisfacer la cuantía por daños y perjuicios.[2]

En lo atinente, el tribunal primario también ordenó lo siguiente en su *Sentencia* de 2012:

.    .    .    .    .    .    .    .

b. La parte demandada **arreglará adecuadamente los drenajes aledaños al Apartamento 3402** propiedad de los demandantes **para eliminar el problema de empozamiento de aguas y la consecuente humedad** que se desarrolla dentro de los treinta (30) días que la presente Sentencia advenga final y firme. (Énfasis nuestro).

.    .    .    .    .    .    .    .

---

[1] Apéndice del peticionario, págs. 10-19.
[2] Refiérase a la *Sentencia* de 21 de agosto de 2014, en el caso KLAN201201955.

A pesar de haber transcurrido más de una década, los litigantes aún se encuentran en la etapa de ejecución del dictamen final e inapelable.

En esta ocasión, con relación al inciso (b) precitado, el señor Ruaño Muñoz presentó un escrito el 24 de enero de 2024, en el que reclamó el cumplimiento cabal del dictamen en el que prevaleció.[3] Cuestionó el estado de los drenajes aledaños al apartamento así como el de las paredes de la unidad, a pesar de haber sido pintadas y tratadas en varias ocasiones. El peticionario replicó y afirmó que las reparaciones se habían realizado.[4] En respuesta, el 6 de marzo de 2024, el foro primario notificó una *Orden*, mediante la cual instó a las partes a inspeccionar los trabajos dentro y fuera del apartamento 3402.[5] Oportunamente, el recurrido solicitó al foro de primera instancia a reconsiderar su determinación.[6] Insistió que el problema de humedad era uno severo, toda vez que los trabajos realizados resultaron en unos insuficientes e inadecuados, a los fines de eliminar el empozamiento de aguas. Además, expresó su disposición para que un perito evaluara el área en controversia. Por su parte, el peticionario informó al tribunal *a quo* la realización de la inspección de las afueras del edificio. Reconoció la queja del señor Ruaño Muñoz de la acumulación de agua en las áreas exteriores a su apartamento.[7]

La parte peticionaria notificó al recurrido el *Informe* del Ing. Alberto Acevedo Morales, fechado el 10 de julio de 2024.[8] No obstante, el recurrido ripostó el documento, ya que no presentaba propuestas concretas para resolver el problema de humedad, sino

---

[3] Apéndice del peticionario, págs. 20-30.
[4] Apéndice del peticionario, págs. 31-73.
[5] Apéndice del peticionario, págs. 74-76.
[6] Apéndice del peticionario, págs. 77-118.
[7] Apéndice del peticionario, págs. 123-131; 132-136; 137-141. Para el *Informe* de 10 de julio de 2024, refiérase al Apéndice del recurrido, Anejo 2.
[8] Apéndice del peticionario, págs. 137-141. Para el *Informe* de 10 de julio de 2024, refiérase al Apéndice del recurrido, Anejo 2.

posibles causas, a pesar de la obligación de eliminarlo. Asimismo, reiteró en la continuidad de los problemas de humedad y empozamiento, que el peticionario debía eliminar, de conformidad con la *Sentencia* de 2012.[9] En consonancia, el recurrido unió el *Informe* del Ing. Francisco Morales Boscio,[10] fechado el 31 de julio de 2024, quien propuso las siguientes soluciones a los problemas señalados:

1. Instalación de un Drenaje Francés: Para manejar adecuadamente las aguas del perímetro y prevenir la infiltración de agua subterránea, se recomienda la instalación de un drenaje francés alrededor del edificio (Ver Anejo 2). Este sistema de drenaje consiste en una zanja rellena de grava y una tubería perforada que recoge y desvía el agua subterránea lejos de los cimientos del edificio, reduciendo así la presión hidrostática sobre las paredes y pisos del apartamento.

2. Sellado de Paredes Exteriores: Se recomienda el sellado de las paredes exteriores a nivel subterráneo para evitar la capilaridad por las paredes. Esto puede lograrse aplicando una membrana impermeabilizante o un sellador elastomérico en las paredes exteriores hasta un metro bajo el nivel del suelo. Este método ayuda a prevenir la penetración de humedad desde el suelo hacia el interior de las paredes.

3. Uso de Barreras de Capilaridad Internas: Para abordar la capilaridad y la eflorescencia que se muestra en el interior del apartamento, se recomienda la instalación de barreras de capilaridad internas. Esto puede incluir la aplicación de pinturas impermeabilizantes y selladores en las superficies interiores de las paredes afectadas. También puede considerarse la instalación de revestimientos cerámicos o vinílicos en las áreas afectadas, que actúan como barreras adicionales contra la humedad ascendente.

4. Inyección de productos epóxicos: Para abordar la humedad por capilaridad y la eflorescencia en el interior del apartamento, se recomienda la inyección de productos epóxicos en las paredes interiores afectadas. Este método sella las microfisuras y evita la penetración de humedad, proporcionando una barrera efectiva contra la humedad ascendente (Howard, 2021).

[5.] Mejora del Sistema de Ventilación: Aunque la fuente principal de humedad parece ser la infiltración subterránea, mejorar la ventilación en el apartamento puede ayudar a reducir la humedad relativa interior. La instalación de aires acondicionados con deshumidificación y/o ventiladores de extracción en áreas clave puede contribuir a mantener un nivel de humedad más bajo y prevenir la acumulación de

---

[9] Apéndice del peticionario, págs. 142-143; 144-168.
[10] Apéndice del peticionario, págs. 150-167.

humedad en las superficies internas, lo cual debe de ir en conjunto con un manejo adecuado de las aguas en el perímetro y las zapatas del edificio.

Al respecto, el peticionario presentó otro *Informe* del ingeniero Acevedo Morales, fechado el 24 de octubre de 2024, para impugnar el documento del ingeniero Morales Boscio.[11] En éste, indicó que 24 de las 114 fotografías incluidas en el *Informe* mostraban áreas ajenas al apartamento 3402; y que el nivel de la unidad se encontraba por encima del terreno de los patios. Añadió que el 6 de febrero de 2024 un plomero certificó que los drenajes se encontraban destapados, por lo que el agua fluía correctamente; así como que no se observaron acumulaciones de agua en el patio durante la evaluación realizada el 30 de septiembre de 2024. A tales fines, recomendó el uso de sellador en las paredes exteriores del apartamento.

El tribunal tomó conocimiento y ordenó que el peticionario acreditara bajo juramento que, en efecto, realizó las reparaciones.[12] El peticionario cumplió con lo ordenado y aseguró que satisfizo la *Sentencia* de 2012.[13] Empero, el recurrido replicó e insistió en las recomendaciones realizadas por el ingeniero Morales Boscio.[14] Entonces, el 16 de diciembre de 2024, el foro de primera instancia se dio por enterado del plan de trabajo sometido por el peticionario.[15] A su vez, en la misma fecha, expresó que daba por cumplida **parcialmente** la *Orden* emitida.[16] Añadió que, una vez concluyeran los trabajos, el peticionario debería informar bajo juramento el trabajo completado.

Además, en cuanto a la *Réplica* del recurrido, el 10 de enero de 2025, notificada el día 22 siguiente, el tribunal primario notificó la *Orden* recurrida, en la que expresó: "PARTE DEMANDADA

---

[11] Apéndice del peticionario, págs. 176-205.
[12] Apéndice del peticionario, págs. 207-209.
[13] Apéndice del peticionario, págs. 210-211; 212-301; 304-305; 306-395.
[14] Apéndice del peticionario, págs. 396-398; 399-414.
[15] Apéndice del peticionario, págs. 415-416.
[16] Apéndice del peticionario, págs. 417-418.

PRESENTE PLAN DE TRABAJO PARA CUMPLIR CON LOS TRABAJOS QUE SURGEN DE ESTA MOCIÓN".[17] Inconforme, el peticionario solicitó la reconsideración del pronunciamiento.[18] Asimismo, prestó juramento de los trabajos completados;[19] a lo que el recurrido replicó brevemente.[20] Por igual, el señor Ruaño Muñoz presentó oposición a la petición de reconsiderar, ya que la adecuación de los trabajo estaba sujeta a la eliminación del problema de empozamiento de agua y humedad.[21] Convencido, el foro intimado declaró No Ha Lugar la solicitud de reconsideración el 13 de marzo de 2025, notificada el día 18.[22] Del mismo modo, el 26 de marzo de 2025, el tribunal indicó al peticionario que tenía un término de diez días perentorio para cumplir taxativamente con la *Orden* de 22 de enero de 2025, bajo apercibimiento de desacato.[23] En respuesta, el peticionario incoó otra moción, en la que anunció un nuevo perito, esta vez, el Ing. Alex Gutiérrez.[24] Éste solicitó que el ingeniero Morales Boscio entregara los parámetros utilizados, el análisis realizado del apartamento 3402, los códigos aplicables, reglamentos a cumplir, diseño preliminar que utilizó, presunciones para fundamentar sus conclusiones y recomendaciones.

Así las cosas, el peticionario acudió oportunamente ante nos y señaló la comisión de los siguientes errores:

*Primer Error*
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN PRESENTADA POR LA PARTE PETICIONARIA.

*Segundo Error*
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSDIERACIÓN PRESENTADA POR LA PARTE PETICIONARIA LUEGO DE HABER

---

[17] Apéndice del peticionario, págs. 419-420.
[18] Apéndice del peticionario, págs. 421-423; 424-517.
[19] Apéndice del peticionario, págs. 518-519; 520-537.
[20] Apéndice del peticionario, págs. 545-549.
[21] Apéndice del peticionario, págs. 538-542.
[22] Apéndice del peticionario, págs. 543-544.
[23] Apéndice del peticionario, págs. 550-551.
[24] Apéndice del peticionario, págs. 552-553; 554-656.

DETERMINADO QUE LA PETICIONARIA HABÍA CUMPLIDO CON LA SENTENCIA DICTADA, COMO EN EFECTO CUMPLIÓ, CO[N]FORME DICTADO POR EL TRIBUNAL.

*Tercer Error*
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR A LA PARTE PETICIONARIA QUE SE PRESENTE UN PLAN DE TRABAJO PARA CUMPLIR <u>CON LO SUGERIDO</u> POR EL PERITO DE LA PARTE RECURRIDA, SIN QUE LA CONSTRUCCIÓN DE UN DRENAJE FRANC[É]S FORMARA PARTE DE LA SENTENCIA DICTADA NI DE ORDEN ALGUNA AL DICTARSE LA MISMA Y MEDIANDO UN INFORME INCOMPLETO.

*Cuarto Error*
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR A LA PARTE PETICIONARIA ACOGER EL INFORME PRESENTADO POR LA PARTE SIN TOMAR EN CONSIDERACIÓN LA OPINIONES DE DOS PERITOS SOBRE LO INCOMPLETO DEL INFORME PRESENTADO POR EL RECURRIDO, LUEGO DE HABER DECLARADO QUE LA PE[T]ICIONARIA HABÍA CUMPLIDO, SIN EL DEBIDO PROCESO DE LEY.

*Quinto Error*
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR QUE SE PRESENTE UN PLAN DE TRABAJO PARA CUMPLIR <u>CON LO SUGERIDO</u> POR EL PERITO DE LA PARTE RECURRIDA, SIN QUE LA CONSTRUCCIÓN DE UN DRENAJE FRANC[É]S FORMARA PARTE DE LA SENTENCIA DICTADA NI DE ORDEN ALGUNA AL DICTARSE LA MISMA E INCLUYENDO EL REFERIDO INFORME, PROYECTOS EN ÁREAS COMUNES AJENAS A LO DISPUESTO EN LA SENTENCIA.

*Sexto Error*
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR A LA PARTE PETICIONARIA QUE SE PRESENTE UN PLAN DE TRABAJO PARA CUMPLIR <u>CON LO SUGERIDO </u>POR EL PERITO Y RECLAMADO POR EL RECURRIDO LUEGO DE DICTADA LA SENTENCIA EL 6 DE SEPTIEMBRE DE 2012, Y NO SURGIR DE LA MISMA, ORDEN DE CONSTRUIR UN DRENAJE FRANCÉS Y MENOS EN ÁREAS COMUNES QUE NO SE RELACIONAN CON LO RECL[A]MADO EN EL CASO Y DISPUESTO EN LA SENTENCIA.

En cumplimiento de nuestra *Resolución* de 5 de mayo de 2025, la parte recurrida presentó el día 20 siguiente una *Moción en cumplimiento de Orden y en oposición a expedición de certiorari*. Con el beneficio de ambas comparecencias, resolvemos.

## II.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra*. Ahora, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

Es sabido que al determinar si expedimos o denegamos un recurso de *certiorari* en etapa de postsentencia nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40.

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

**III.**

En la presente causa, la parte peticionaria plantea que el foro de primera instancia erró al denegar la solicitud de reconsideración, luego de expresar que había cumplido con la *Sentencia* de 2012. Riposta la imposición de realizar un drenaje francés, incluso en áreas comunes ajenas al apartamento del recurrido, puesto que ese tipo de trabajo no formó parte del dictamen. Cuestiona también la alegada insuficiencia del *Informe* del ingeniero Morales Boscio.

En este caso, de conformidad con el expediente que revisamos, resulta obvio que el foro impugnado ha sido consecuente en sus determinaciones. Nótese que el tribunal aludió a un cumplimiento parcial, por lo que ordenó al peticionario la presentación de un plan de trabajo acorde con las recomendaciones del ingeniero Morales Boscio, de las cuales se tiene constancia desde el verano de 2024. Al fin y al cabo, el problema de empozamiento de agua en zonas aledañas y la humedad en el apartamento 3402 persisten, aun con los trabajos realizados al presente.

A la luz de la evaluación del recurso de *certiorari*, concluimos que la parte peticionaria no nos persuadió de que el foro recurrido hubiese cometido algún error, que justifique nuestra intervención en

esta etapa de postsentencia. Ciertamente, el mandato de la *Sentencia* de 2012 fue *arreglar adecuadamente los drenajes aledaños al Apartamento 3402* con el fin específico de *eliminar el problema de empozamiento de aguas y la consecuente humedad.* Así, pues, al no converger ninguno de los criterios enumerados en la Regla 40 de nuestro Reglamento, *supra,* acordamos la denegación del auto discrecional.

## IV.

Por lo antes expuesto, denegamos la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones